**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES** | | **CRIMINAL ACTION** |
| **v.** | | |
| **EVENS CLAUDE** | | **NO.  12-33-01** |

DuBois, J.                                                                    August 13, 2020

## M E M O R A N D U M

### I.      INTRODUCTION

Presently before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") filed *pro se* by defendant

Evens Claude.  For the reasons that follow, defendant's § 2255 Motion is denied.

### II.     BACKGROUND

#### A.  Procedural Background

On June 6, 2012, a grand jury returned a Superseding Indictment charging Evens Claude

with two counts of conspiracy in violation of 18 U.S.C. § 371, seven counts of uttering

counterfeit currency in violation of 18 U.S.C. § 472, two counts of access device fraud in

violation of 18 U.S.C. § 1029(a)(2), eight counts of aggravated identity theft in violation of 18

U.S.C. § 1028A, two counts of bank fraud in violation of 18 U.S.C. § 1344, and one count of

aiding and abetting in violation of 18 U.S.C. § 2.  Prior to trial, the Government dismissed five

counts of uttering counterfeit currency.  On February 15, 2013, after a jury trial, defendant was

convicted on all remaining counts.  On August 29, 2014, the Court sentenced defendant to, *inter*

*alia*, 232 months' imprisonment.

On May 8, 2017, defendant filed *pro se* a Memorandum of Law and Supportive

Appendix in Support of Motion to Correct, Vacate, and/or Set-Aside Conviction Pursuant to

Title 28 U.S.C. § 2255 (Document No. 413).  On June 7, 2017, defendant filed *pro se* a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Document No. 419).  In his § 2255 Motion and accompanying Memorandum, defendant sets forth seven grounds for relief based on trial counsel's alleged ineffective assistance of counsel.  Def.'s § 2255 Mot. 4-9.  The Government responded on September 1, 2017 (Document No. 424).  Defendant filed a Reply on October 17, 2017 (Document No. 425). On October 25, 2017, the Court reappointed Mark Cedrone, Esq., to represent defendant.[1]

On March 14, 2019, an evidentiary hearing was held with respect to Grounds One, Four, and Five of defendant's § 2255 Motion.  Three witnesses testified at the hearing: defendant; FDC counsel Marisa Nash, Esq.; and defendant's trial counsel Louis Busico, Esq.  Following the hearing, the Court ordered the parties to submit requests for findings of fact and conclusions of law.

The following facts are taken from the record in this case and the parties' requests for findings of fact filed after the March 14, 2019 evidentiary hearing.

### B.  Appointment of Trial Counsel

On January 31, 2012, Carina Laguzzi, Esq., was appointed to represent defendant in this case.  Govt.'s Proposed Findings Fact & Conclusions of Law ("Govt.'s FFCL") ¶ 16.  On April 12, 2012, Ms. Laguzzi filed a motion to withdraw as counsel, which was granted by the Court on June 18, 2012.  *Id.* ¶ 17.  On June 19, 2012, Louis R. Busico, Esq., was appointed to represent defendant.  *Id.* ¶ 18.

### C.  Discovery

Between February 24, 2012, and approximately March 22, 2012, the Government

---

[1] Mr. Cedrone was previously appointed on September 9, 2014, to represent defendant on appeal.

provided Ms. Laguzzi with three discovery discs.  *Id.* ¶ 20.  Ms. Laguzzi sent the three discs and

two others to defendant at FDC Philadelphia for his review on April 17, 2012.  *Id.* ¶ 21.  On

August 23, 2012, after the Superseding Indictment added three defendants and additional

charges, the Government sent Mr. Busico a total of 34 additional discovery discs.  Pet'r's Req.

Findings Fact & Conclusions of Law ("Def.'s FFCL") ¶ 14; Def.'s Ex. 21.  Additional discovery

discs and reports of evidence, exhibits, *Jencks* and *Giglio* materials were provided to Mr. Busico

between November 20, 2012, and February 10, 2013.  Govt.'s FFCL ¶ 23.[2]

On October 2, 2012, Mr. Busico sent a letter to defendant, which stated: "[e]nclosed

please find copies of discs containing the Discovery in your case."  *Id.* ¶ 27; Govt. Ex. 3.[3]  These

discs were not logged into Federal Detention Center ("FDC") Philadelphia's legal department

review system.  *Id.* ¶ 27.[4]  Defendant disputes that Mr. Busico sent the letter and asserts that he

did not receive any discovery discs from Mr. Busico while Mr. Busico represented him.  Def.'s

Resp. Govt.'s FFCL ¶ 27.

On January 29, 2013, Mr. Busico sent defendant additional discovery received from the

Government at a January 25, 2013 status hearing, including notes and reports.  *Id.* ¶ 29; Govt.

Ex. 17.  Defendant testified that he received the letter but did not say whether he remembered

receiving the discovery.  Mar. 14, 2019 Hr'g Tr. ("Mar. 14 Tr.") 152:12-19; Def.'s Resp. Govt.'s

---

[2] The Government produced two additional discovery discs to Mr. Busico on November 20, 2012; five discovery discs on November 28, 2012.  Def.'s FFCL ¶¶ 17, 19.  Additional discovery was produced to Mr. Busico on December 20, 2102; January 8, 2012; and January 30, 2013. *Id.* ¶¶ 23, 31, 35.

[3] The Government explains that none of Mr. Busico's correspondence with defendant was included in the log of legal mail correspondence maintained by FDC Philadelphia because Mr. Busico did not mark his correspondence as "legal mail."  Govt.'s FFCL ¶¶ 25-26.  Defendant contends that there is thus "little proof beyond Mr. Busico's testimony that Mr. Claude received any correspondence purportedly sent by Mr. Busico" and asks the Court to "seriously question[]" Mr. Busico's credibility.  Def.'s Resp. Govt.'s FFCL ¶ 26.

[4] FDC Philadelphia creates a memorandum when an inmate receives discovery in an electronic form—such as a CD, DVD, or hard drive.  Govt.'s FFCL ¶ 25.  All electronic media received at the FDC are subject to this process.  *Id.*  FDC Philadelphia's records do not reflect that defendant was sent any discovery discs during the time that Mr. Busico represented him.  Mar. 14 Hr'g Tr. 42:15-44:15.

FFCL ¶ 29.

Mr. Busico testified that, although he did not view the discovery discs with defendant at a computer in FDC Philadelphia, he did review the contents of the discovery and discuss the evidence with defendant during their several meetings.  Govt.'s FFCL ¶ 30; Mar. 14 Tr. 214:1-215:5.  The Government's evidence—including records from FDC Philadelphia and Mr. Busico's billing records—reflects that either Mr. Busico or his associate, Charles Leone, Esq., met with defendant prior to trial on the following dates:

- On July 11, 2012, Mr. Leone met with defendant for two and a half hours.  Govt.'s FFCL ¶ 32(a).

- On July 13, 2012, Mr. Busico met with defendant for approximately one hour.  *Id.* ¶ 32(b).

- On December 19, 2012, Mr. Busico met with defendant for approximately two hours. *Id.* ¶ 32(d).

- On January 9, 2013, Mr. Busico met with defendant for approximately two hours.  *Id.* ¶ 32(e).

- On January 25, 2013, Mr. Busico met with defendant for approximately one and a half hours.  *Id.* ¶ 32(f).  Defendant disputes that this meeting occurred.  Def.'s Resp. Govt.'s FFCL ¶ 32(f); Def.'s FFCL ¶ 39; Def. Exs. 12 & 17

- On January 30, 2013, Mr. Busico met with defendant for approximately one and a half hours.  Govt.'s FFCL ¶ 32(g).  Defendant disputes that this meeting occurred.  Def.'s Resp. Govt.'s FFCL ¶ 32(g).

Defendant contends that neither Mr. Busico nor Mr. Leone reviewed any discovery with him during their visits.  Def.'s FFCL ¶ 39.  Mr. Busico's CJA billing records reflect that, prior to

trial, he spent a total of 74.5 hours obtaining and reviewing records—including discovery, *Jencks* material, and the Government's trial memorandum and proposed voir dire.  Govt.'s FFCL ¶ 34. The billing records also report that Mr. Busico spent 66.5 hours on legal research and writing. *Id.*  Defendant contends that Mr. Busico's billing records are not reliable in light of "inconsistencies between Mr. Busico's billing records and other records."  Def.'s Resp. Govt.'s FFCL ¶¶ 33-34.

### D.  Discussions of C-Plea Offer and Sentencing Guidelines

On November 26, 2012, Mr. Busico wrote a letter to defendant, advising him that he was researching issues related to a motion to suppress but that a potential "Motion to Dismiss the Indictment" had "absolutely no merit."  Govt.'s FFCL ¶ 38; Govt.'s Ex. 5.  He further requested that defendant "stop repeatedly writing to our trial judge with [his] numerous complaints."  *Id.* Mr. Busico explained that defendant's case "consists of very serious charges which will result in you spending over a decade in prison if we do not negotiate a non-trial resolution on your behalf or, in the alternative, prevail at trial."  *Id.*  Defendant responded to Mr. Busico's letter and stated "I don't care what you're saying, I don't want my trial date to be push back because the government is doing a lot of foul play in this case, I need to go to trial as soon as possible." Govt. Ex. 6.[5]

On December 3, 2012, Mr. Busico sent a letter to defendant, advising him that Mr. Busico had filed a Motion to Suppress Evidence and Statements.  Govt.'s FFCL ¶ 39.  Mr. Busico cautioned that he did not "share [defendant's] belief that the June 28, 2011 stop, search and questioning of [defendant] by law enforcement will result in all evidence against [defendant]

---

[5] Defendant points out that, according to Mr. Busico's billing records as of the November 26 letter, he had "had only reviewed discovery for a total of 12.5 hours, and had only met with Mr. Claude for a several hours."  Def.'s Resp. Govt.'s FFCL ¶ 38.

being dismissed pursuant to a 'fruit of the poisonous tree' argument." *Id.*; Govt. Ex. 7.  The

Motion to Suppress was granted in part and denied in part by the Court on January 16, 2013.

On December 28, 2012, Mr. Busico wrote to defendant following a hearing on

defendant's pre-trial motions, Govt.'s FFCL ¶ 40,  stating the following:

> Even if we are successful on some or all of our Motions, it does not
> necessarily mean that all evidence against you will be dismissed.  To
> the contrary, I regret to inform you that it is my opinion the United
> States Government can still convict you on many charges contained
> in the Superceding [sic] Indictment which could result in you
> receiving a sentence in excess of twenty (20) years of incarceration.

Govt. Ex. 9 at 1.  Mr. Busico also noted that he was "somewhat 'handicapped'" by the proffer

sessions that defendant and his prior counsel had engaged in with the Government.  *Id.* at 1.

With respect to a non-trial disposition, Mr. Busico advised defendant: "[w]hile I fully realize that

you want to proceed to trial and I am more than willing to defend you at same, it would be ill

advised of you not to consider a non-trial disposition to the case."  *Id.* at 1.  On that issue, Mr.

Busico stated he had "asked the Government to prepare a 'C' Plea for us to review," and

explained that "[t]here exists absolutely no downside in our entertaining a non-trial disposition to

a fixed term of incarceration."  *Id.* at 2.  Defendant testified that he received the letter and had

discussions with Mr. Busico about its contents.  Mar. 14 Tr. 130:2-131:24.

According to Mr. Busico, his proposal to seek a C-plea was prompted by "a review of the

discovery that was forthcoming after my appointment."  Mar. 14 Tr. 191:20-23.  He believed that

"the evidence in the case was exceedingly strong" considering the witnesses who were prepared

to testify against defendant and the number of sympathetic victims in the case.  *Id.* at 191:24-

192:4.  Mr. Busico also noted that "[t]here was the prospect of the minimum mandatory penalty

on the aggravated identity theft charge" and "that [defendant] already had been convicted of the

counterfeit currency case in the state of Texas making it difficult[,] if not impossible[,] for him to

ever take the stand if everything else was perfect." *Id.* at 192:4-9.  Mr. Busico testified that

defendant "absolutely knew of" and "was told of" these problems in his case. *Id.* at 192:18-25.

In response, defendant states that Mr. Busico's billing records reflect that, as of December 28,

2012, he "had only reviewed the voluminous discovery for 12.5 hours."  Def.'s Resp. Govt.'s

FFCL ¶¶ 40-41.

On or before December 28, 2012, Mr. Busico asked the Government to estimate

Sentencing Guidelines calculations for defendant's possible sentence.  Govt.'s FFCL ¶ 42;

Govt.'s Ex. 10.  Because the Government was unsure of defendant's correct criminal history

category, it replied on December 28, 2012 with sentencing calculations based on two different

criminal history categories. *Id.*  Assuming a criminal history category of five, the Sentencing

Guidelines range was 212 to 259 months. *Id.*  Assuming a criminal history category of six, the

Sentencing Guidelines range was 234 to 286 months. *Id.*  Defendant's criminal history category

was ultimately determined to be category four.  Mar. 14 Tr. 101:9-111.

Mr. Busico forwarded the Government's estimated Sentencing Guidelines calculations to

defendant by letter dated January 2, 2013, Govt. Ex. 12, emphasizing that defendant was "facing

a sentence of approximately twenty (20) years of incarceration" and, "[g]iven the fact that you

may not ever be deported back to Haiti, I strongly suggest we explore the possibility of a non-

trial resolution to any sentence beneath fifteen (15) years." *Id.*  Defendant testified that he

"didn't recall" if he received Mr. Busico's January 2, 2013 letter, but conceded that Mr. Busico

"might have had it with him" when they later met on January 9, 2013.  Mar. 14 Tr. 102:8-14.

On January 2, 2013, the Court forwarded to Mr. Busico an undated letter from defendant

to the Court, in which defendant attempted to reopen the Motion to Suppress.  Govt. Ex. 13.

Defendant's arguments were based on information on a disc that defendant claimed to have

enclosed with the letter. *Id.* However, no such disc was enclosed. *Id.* Mr. Busico sent a letter to defendant on January 3, 2013, warning him that his "repeated attempts to influence the court through correspondence will in no way benefit your situation." Govt. Ex. 14. Mr. Busico reminded defendant of the proffer sessions defendant previously engaged in and cautioned that defendant was "making an already strong case against you even stronger with these nonsensical writings." *Id.*

On January 4, 2013, the Government sent a letter to Mr. Busico advising him that the Government "would consider a 'C' plea to 154 months: that is, 3 levels for 'timely acceptance' plus 2 additional levels below the applicable guidelines range." Govt. Ex. 11. The Government explained that the offer "must be accepted by close of business (5:00 p.m.) on Friday, January 11, 2013, to get the third point for timely acceptance." *Id.*

On January 9, 2013, Mr. Busico and defendant met at FDC Philadelphia for approximately two hours to discuss the Government's offer. Govt.'s FFCL ¶ 48. Mr. Busico advised defendant of the "benefits of not going to trial" and that defendant was "in a really tough spot." Mar. 14 Tr. 200:20-201:8. Mr. Busico testified that he "probably did not ram it down his throat, if you will, or be—act overly forceful because you don't want a person believing that you don't have the wherewithal to defend them in the Court." *Id.* at 201:3-6. Mr. Busico added that defendant "knew the witness list" and "was advised of what the evidence was." *Id.* at 201:15-23. According to Mr. Busico, defendant "indicated . . . that he understood" what the Government "was going to produce in a courtroom." *Id.* at 202:2-4. However, after being advised of the Government's offer, defendant "immediately and adamantly rejected it and expressed desire to proceed to trial." Govt. Ex. 15. This decision was memorialized in letters from Mr. Busico to defendant and the Government on January 10, 2013. Govt. Exs. 15 & 16.

On January 25, 2013, at a pretrial hearing, the Court asked the parties whether a plea agreement had been offered by the Government.  Govt.'s FFCL ¶ 50.  The Government responded that it had proposed a term of imprisonment of approximately 12 years, eight months, but that no other terms were discussed or offered after the offer was rejected.  *Id.*  The Court asked defendant: "did you get sufficient time, enough time, to think about it and to discuss it with Mr. Busico and to decide whether you wanted to go forward with this plea agreement or not."  *Id.*  Defendant answered, "I had enough time."  *Id.*

On January 29, 2013, Mr. Busico sent a letter to defendant with additional discovery received from the Government.  Govt. Ex. 17.  In the letter, Mr. Busico listed admissions made by defendant in previous proffer sessions and explained that he was "exceedingly and ridiculously handicapped and limited to what I can argue on your behalf."  *Id.* As discussed *supra*, defendant testified that he received the letter but did not say whether he received the discovery.  Mar. 14 Tr. 152:12-19; Def.'s Resp. Govt.'s FFCL ¶ 29.

The case proceeded to trial on February 4, 2013.  Defendant never wrote to Mr. Busico expressing a desire to plead guilty and defendant never asked Mr. Busico to stop trial and allow him to plead guilty.  Govt.'s FFCL ¶ 52.  Mr. Busico testified that defendant may have whispered to him during trial "I'll cooperate" or "[g]et me a deal . . . I'll plead if I'm released to go out and . . . do . . . work for them."  Mar. 14 Tr. 204:10-21, 220:2-12.  However, the Government had informed Mr. Busico and defendant on multiple occasions that it had no interest in defendant's cooperation at that time.  Govt.'s FFCL ¶ 52.

**E.  Sentencing**

Following his conviction on all counts, defendant filed *pro se* motions for a judgment of acquittal and for a new trial (Documents Nos. 179 & 175) while he was still represented by Mr.

Busico.  Govt.'s FFCL ¶ 56; Govt.'s Resp. Def.'s § 2255 Mot. 12.  On February 19, 2013,

defendant requested appointment of new counsel, which was denied by the Court on March 5,

2013.  Govt.'s Resp. Def.'s § 2255 Mot. 12.  On February 27, 2013, defendant requested leave to

proceed *pro se* in the post-conviction proceedings (Document No. 173).  At a hearing on May

31, 2013, following a colloquy with defendant in open court, in which defendant stated that he

still desired to represent himself at sentencing and to waive his right to counsel, the Court

granted defendant's request to proceed *pro se*.  In granting defendant's request, however, the

Court ordered Mr. Busico to serve as standby counsel.  The Court explained to defendant that

Mr. Busico would be "there for you if you have any legal issues on which you need a hand" and

that the Court would order Mr. Busico to assist defendant if defendant so requested.  Govt.'s

Resp. Def.'s § 2255 Mot. 12-13.

      Defendant's *pro se* motions for a judgment of acquittal and for a new trial were denied by

the Court on May 31, 2013, in all respects other than double jeopardy arguments raised in the

briefing.  Defendant's double jeopardy arguments were denied by the Court following a hearing

on August 28, 2013.  Defendant did not seek Mr. Busico's assistance during that hearing.

Govt.'s Resp. Def.'s § 2255 Mot. 14.

      In total, defendant filed approximately 25 *pro se* motions and memoranda after his

conviction and sent the Court approximately 15 letters requesting relief or other action.  *Id.* at 16.

Defendant never asked the Court to order Mr. Busico to perform any research or prepare any

sentencing memoranda.  *Id.*  However, Mr. Busico did assist defendant during negotiations with

the Government regarding various Sentencing Guidelines issues.  *Id.* at 15.

      Defendant's sentencing hearing commenced on August 27, 2014 and ran through August

29, 2014.  *Id.* at 16.  During the hearing, at defendant's request, Mr. Busico cross-examined

Assistant District Attorney Carlos Vega regarding defendant's testimony at the murder trial of Carl Smith and presented additional evidence on the issue. *Id.* at 17. Mr. Busico also cross-examined Special Agent Alisa Foster concerning information supporting the Guidelines' four-level enhancement for defrauding 50 or more victims. *Id.* Defendant stated during the hearing that "Mr. Busico is doing a fine job." *Id.* The Court sentenced defendant to, *inter alia*, 232 months' imprisonment.

### III.   LEGAL STANDARD

The standard for evaluating an ineffective assistance of counsel claim is set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel under *Strickland*, petitioner must demonstrate that his counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. *Id.* at 688, 692. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

A court, in determining whether counsel's performance fell below an objective standard of reasonableness, must evaluate "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. In applying the *Strickland* test to counsel's performance, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. The Court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they are unreasonable. *Id.* at 690; *see*

*also Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.") (quoting *Strickland*, 66 U.S. at 690-91).

The second prong of *Strickland*, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a, "probability sufficient to undermine confidence in the outcome." *Id.*

## IV.    DISCUSSION

In his § 2255 Motion, defendant raises the following seven grounds for relief based on ineffective assistance of trial counsel:

- (1) Failing to advise defendant of the strength of the Government's case;

- (2) Failing to prepare defendant to testify in his own defense, causing him to waive his Sixth Amendment right to testify;

- (3) Failing to call defendant's sister to testify;

- (4) Failing to advise defendant of the application of the Federal Sentencing Guidelines' relevant conduct provision;

- (5) Failing to explain the Federal Sentencing Guidelines' acceptance of responsibility provisions;

- (6) Failing to prepare for the sentencing hearing;

- (7) The cumulative impact of counsel's errors.

Def.'s § 2255 Mot. 4-9. For the reasons that follow, the Court denies defendant's § 2255 Motion

on all grounds.

### A. Ground One: Failure to Advise Defendant of the Strength of the Government's Case

Defendant argues that he was "denied his right to effective assistance of counsel prior to trial when he was not given sufficient information to make an informed decision regarding the 'C-plea' offer and then proceeded to trial in the face of overwhelming evidence." Def.'s FFCL 8. Defendant contends that Mr. Busico "did no investigation" and "did not send any of the 40-plus discovery discs to Mr. Claude, nor did he explain the elements of the charges in this complex case necessary to secure a conviction." *Id.* at 9. It is defendant's position that Mr. Busico was required to send him the discovery and "personally review it with [defendant] and advise him that the evidence was overwhelming." *Id.* The Government responds that the evidence belies defendant's claims and that the law does not support the argument that defendant's "attorney was obliged to show all the discovery materials to Claude to personally review before Claude could make an informed decision about whether to accept or reject a potential C-plea offered by the government." Govt.'s FFCL 24-26. The Government argues that, according to Mr. Busico's testimony and correspondence with defendant, counsel gave defendant "fulsome and effective advice . . . with respect to the decision to plead guilty." *Id.* at 25. The Court agrees with the Government on this issue.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "When addressing a guilty plea, counsel is required to give a defendant enough information" to "make a reasonably informed decision whether to accept a plea offer." *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (internal quotations omitted). Courts in the Third Circuit have held, where defense counsel "was passive and did not clearly advise [defendant] to accept the offered plea," there is

ineffective assistance of counsel.  *Hsia v. United States*, No. 14-2372, 2016 WL 3844206, at *8 (D.N.J. July 14, 2016).

The Court concludes that Defendant's argument that Mr. Busico was obligated to show him all of the discovery materials before he could make an informed decision regarding the Government's plea offer is not supported by law.  To the contrary, courts have consistently held that "[d]efense counsel is not required to present a defendant, for his review, with all discovery material that defense counsel acquires."  *Rodriguez v. United States*, Nos. 11 Civ. 6707, 09 CR 58, 2013 WL 3388223, at *6 (S.D.N.Y. July 8, 2013); *see also United States v. Faulkner*, No. 09-249, 2011 WL 3962513 at *4 (N.D. Tex., Sept. 8, 2011) (noting an absence of authority for the argument that, "to be ensured effective assistance of counsel, a defendant must be able to personally review all of the relevant discovery before trial."); *United States v. Thompson*, No. 10-200, 2013 WL 1809659 at *6 (D. Me. April 29, 2013) ("I am aware of no case holding that the Constitution requires that a defendant represented by a lawyer must personally see all the discovery that the government discloses to defense counsel or even the discovery that he asked to see."); *U.S. v. Winkelman*, 548 F. Supp. 142, 148 (M.D. Pa. 2008) (rejecting claim for ineffective assistance of counsel based on counsel's failure to provide defendant with discovery).  Though some of these decisions did not arise in the context of an ineffective assistance of counsel claim, the weight of authority is nonetheless that a defendant's personal review of discovery is "not constitutionally required or otherwise legally mandated where, as here, [defendant] is represented by counsel who has had the ability to review the discovery before trial."  *Faulkner*, 2011 WL 3962513 at *4.

Under applicable law, Mr. Busico was not required to provide defendant with all of the discovery obtained from the Government.  Regardless of the parties' dispute regarding how

14

much discovery was delivered to or reviewed with defendant, the Court concludes that Mr. Busico fulfilled his obligation to give defendant enough information to make a reasonably informed decision by advising him of the strength of the Government's case and recommending that he explore a non-trial resolution.  Mr. Busico testified that he investigated the discovery provided to him by the Government and his CJA billing records reflect that he spent hours reviewing the discovery before seeking a plea offer from the Government.  Mar. 14 Tr. 214:1-215:5; Govt. Ex. 21.  In total, the billing records disclose that he spent 74.5 hours obtaining and reviewing records, including discovery, prior to trial.  Govt.'s FFCL ¶ 34.  Mr. Busico further testified that he discussed the substance of the discovery with defendant and defendant "indicated to [Mr. Busico] that he understood" what the Government "was going to produce in a courtroom."  *Id.* at 214:1-215:5, 202:2-4.  The record reflects that, far from remaining passive, Mr. Busico repeatedly emphasized the strength of the Government's case against defendant and advised him to consider a non-trial disposition.  *See* Tr. 3/14/19 191:12-192:17, 200:20-201:16, 214:7-11; Govt. Exs. 5, 9; *see also U.S. v. Diaz*, No. 13-1532, 2015 WL 3792624, at *8 (M.D. Pa. June 18, 2015) ("There is no jurisprudential basis for [the argument] that counsel rendered ineffective assistance because [he] did not encourage a plea more persistently and forcefully.").  Defendant nonetheless "adamantly rejected" the Government's plea offer.  Govt. Ex. 15.

Based on the foregoing, the Court concludes that Mr. Busico adequately informed defendant of the strength of the Government's case and his performance did not fall below an objective standard of reasonableness.  Thus, the Court denies Ground One of defendant's § 2255 Motion.

### B.  Ground Two: Failure to Prepare Defendant to Testify in His Own Defense

Defendant argues that his decision not to testify at trial was "made after an incomplete

15

failure to prepare defendant to testify," and that, as a result, he was "not able to present a proper defense to the charges."  Def.'s Memo. § 2255 Mot. 21-22.  Defendant claims that he "felt that he could not testify since he did not know the angle that counsel wanted to pursue as part of the defense" and that it "served no strategy" not to have him testify.  *Id.* at 22.  In response, the Government argues that defendant fails to satisfy *Strickland*'s prejudice prong by not identifying testimony he could have provided that would have created a "a reasonable probability that . . . the result of the proceeding would have been different."  Govt.'s Resp. Def.'s § 2255 Mot. 30 (quoting *Palmer v. Hendricks*, 592 F.3d 386, 394 (3d Cir. 2010)).  The Court agrees with the Government on this issue.

"An allegation that counsel denied a § 2255 petitioner the right to testify must be supported by more than a barebones assertion."  *Donna v. U.S.*, No. 10–1607, 2011 WL 322636, *6 (D.N.J. Jan. 31, 2011) (internal quotations omitted).  Courts have held that the right to testify is knowingly and intelligently waived where a defendant is "aware of his right to testify, understood counsel's rationale for not calling him as a witness, and failed to raise with the court his desire to testify."  *U.S. v. Aldea*, 450 F. App'x 151, 153 (3d. Cir. 2011).  In this case, the record clearly reflects that defendant was informed of his right to testify and elected not to after discussing the matter with Mr. Busico.  Govt.'s Resp. § 2255 Mot. 11-12.  Accordingly, defendant fails to satisfy *Strickland*'s first prong.

Even if defendant could satisfy *Strickland*'s first prong, he also fails to satisfy the second prong.  "To establish prejudice, a defendant must demonstrate a reasonable probability the result would have been different but for counsel's ineffectiveness."  *U.S. v. Aldea*, 450 F. App'x 151, 153 (3d. Cir. 2011).  A defendant's "vague and conclusory claim that his testimony would have rebutted 'every material fact' and every adverse witness falls well short of establishing a

16

'reasonable probability' that, had he testified, 'the result of the proceeding would have been different.'" *Johnson v. U.S.*, 294 F. App'x 709, 710 (3d Cir. 2008) (quoting *Strickland*, 466 U.S. at 694). The Court thus concludes that defendant fails to show prejudice because he does not identify any testimony he could have given that would have created a reasonable probability that the result of the proceeding would have been different.

Based on the foregoing, the Court denies Ground Two of defendant's § 2255 Motion.

## C. Ground Three: Failure to Call Defendant's Sister to Testify

Defendant claims ineffective assistance of counsel based on Mr. Busico's failure to interview and call his sister, Nancy Claude, to testify that defendant's brother also had access to the computer that was used by defendant during the period of the identity theft conspiracy. Def.'s Memo. § 2255 Mot. 23-24. He argues that this information could have been used to "create the doubt required for the jury to reach a different verdict." *Id.* at 23. The Government responds that Mr. Busico's strategy was not only reasonable, but obviously correct. Govt.'s Resp. Def.'s § 2255 Mot. 35. John Moet Claude, defendant's brother, was a named co-conspirator in the Superseding Indictment. *Id.* Therefore, Nancy's testimony would have only added to the Government's case by providing more evidence of crimes committed by a co-conspirator. *Id.*

"The decision of whether to interview and call a particular witnesses is generally a strategic choice made by counsel and is entitled to a 'heavy measure of deference.'" *U.S. v. Brown*, No. 04-532, 2011 WL 4835846, at *4 (E.D. Pa. Oct. 12, 2011) (quoting *Strickland*, 466 U.S. at 690-91). An evaluation of the failure on the part of defense counsel to call a witness at trial under the first prong of *Strickland* requires the Court to decide whether the decision not to call the witness was "in the exercise of reasonably professional judgment." *Strickland*, 466 U.S.

17

at 690; *see also Duncan v. Morton*, 256 F.3d 189, 201 (3d Cir. 2001).  Given professional

reasonableness as a touchstone, "[t]he Constitution does not oblige counsel to present each and

every witness that is suggested to him." *United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir.

1990).  Accordingly, when challenging the failure to interview a potential witness, "there must

be a clear showing that the testimony would have been material and favorable." *Brown*, 2011

WL 4835846 at *4.  In this case, there has been no such showing.  To the contrary, calling a

witness to provide evidence against a co-conspirator would have been detrimental to defendant's

case.  The Court thus denies Ground Three of defendant's § 2255 Motion.

### D. Grounds Four and Five: Failure to Advise Defendant of the Application of the Federal Sentencing Guidelines' Relevant Conduct and Acceptance of Responsibility Sections

Defendant argues that Mr. Busico "rendered ineffective assistance by failing to advise

Mr. Claude properly regarding the application of the Federal Sentencing Guidelines' relevant

conduct and acceptance-of-responsibility provisions."  Def.'s FFCL 10-11.  Defendant

emphasizes that, after the Government sent Mr. Busico the estimate of defendant's Guidelines

calculation on December 28, 2012, Mr. Busico did not charge the Court for "guidelines-related

research" before meeting with defendant to discuss the plea offer.  *Id.* at 11.

As discussed *supra*, "[w]hen addressing a guilty plea, counsel is required to give a

defendant enough information" to "make a reasonably informed decision whether to accept a

plea offer."  *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (internal quotations omitted).

The Third Circuit has "identified potential sentencing exposure as an important factor in the

decision-making process, stating that 'knowledge of the comparative sentence exposure between

standing trial and accepting a plea offer will often be crucial to the decision whether to plead

guilty.'"  *Id.* (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)), *cert. denied*, 134 S.

Ct. 1340 (2014)).  "In order to provide this necessary advice, counsel is required 'to know the

Guidelines and the relevant Circuit precedent.'"  *Id.* (quoting *United States v. Smack*, 347 F.3d

533, 538 (3d Cir. 2003)).  However, the Third Circuit has made clear that "counsel's obligations

to explain possible sentencing outcomes are not all-encompassing."  *United States v. Vaughn*,

704 F. App'x 207, 212 (3d Cir. 2017).  In particular, counsel "need not provide 'anything

approaching a detailed exegesis of the myriad arguably relevant nuances of the Guidelines,' nor

must she give 'an exact number or close estimate of the maximum sentencing exposure.'"  *Id.*

(quoting *Day*, 969 F.2d at 43; *Shotts*, 724 F.3d at 376).

    Mr. Busico testified that he met with defendant to explain what the Guidelines

calculations were if he pled guilty as compared to going to trial.  Mar. 14 Hr'g Tr. 196:1-15.

They specifically discussed the benefit of "acceptance of responsibility" and, according to Mr.

Busico, defendant "absolutely" understood the concept.  *Id.*  Moreover, on January 25, 2013, at a

pretrial conference, this Court asked Mr. Busico in defendant's presence if he had discussed the

maximum sentence with defendant.  Mr. Busico replied, without contradiction by defendant, that

he had discussed the Guidelines range for both a trial and non-trial resolution to his case.

Govt.'s FFCL ¶ 46.  Defendant acknowledged that he understood the Court's question and his

counsel's response.  *Id.*

    The Court concludes that Mr. Busico provided defendant with sufficient information

about his potential sentencing exposure for defendant to make an informed decision about

whether to accept the Government's plea offer.  Mr. Busico's testimony establishes that he

explained the Guidelines calculations for the potential sentence defendant faced by going to trial

and the benefits of a non-trial resolution.  Though there is no evidence that he specifically

explained the relevant conduct provisions of the Guidelines, he was not required to provide a

"detailed exegesis of the myriad arguably relevant nuances of the Guidelines." *Vaughn*, 704 F. App'x at 212.  Moreover, notwithstanding the fact that the Government's calculations were based on an incorrect criminal history category, Mr. Busico was not required give "an exact number or close estimate of the maximum sentencing exposure." *Id.*  Nonetheless, Mr. Busico accurately estimated that defendant was facing approximately twenty years' imprisonment by deciding to proceed to trial.  Govt. Ex. 12.[6]

The Court concludes that Mr. Busico's performance did not fall below an objective standard of reasonableness with regard to advising defendant of the application of the Federal Sentencing Guidelines and thus denies grounds Four and Five of defendant's § 2255 Motion.

### E.  Ground Six: Failure to Prepare for the Sentencing Hearing

Following defendant's conviction, at a hearing on May 31, 2013, the Court granted his request to proceed *pro se* at sentencing and Mr. Busico was appointed as standby counsel. Defendant contends that he made this decision "after he considered that counsel would have prepared for the sentencing hearing and would have prepared sentencing memorandums and arguments for sentencing."  Def.'s Memo. § 2255 Mot. 32.  Defendant claims that he "was under the impression" that Mr. Busico would provide defendant "with the defense memorandums and legal arguments he would use at sentencing."  *Id.*  After Mr. Busico informed defendant that "he had not prepared for sentencing and did not have any defense motions prepared for the sentencing hearing," defendant explains that he was "forced to prepare with the limited resources

---

[6] Defendant cites the Supreme Court decision in *Rosales-Mireles v. U.S.* in support of his contention that the error in the Government's estimated Guidelines calculation regarding his criminal history category prevented him from making a reasonably informed decision.  Def.'s Post Hearing Br. 12-13.  In *Rosales-Mireles*, the Supreme Court considered such an error in a defendant's presentence investigation report under plain error review pursuant to Federal Rule of Criminal Procedure 52(b).  138 S.Ct. 1897, 1905 (2018).  Defendant does not argue that a similar error was made in his presentence investigation report.  Moreover, the Third Circuit has made clear that counsel need not give "an exact number or close estimate of the maximum sentencing exposure" to keep a defendant reasonably informed.  *Shotts*, 724 F.3d at 376.  Accordingly, *Rosale-Mireles* is distinguishable and defendant's reliance on that case is misplaced.

that he had at his disposal." *Id.* at 33.  Defendant further argues that his right to counsel was

constructively denied as a result of Mr. Busico's failure to prepare for sentencing while still

serving as his counsel.  Def.'s FFCL 12.

"Before a criminal defendant can be permitted to proceed *pro se*, a court must make

certain that he is knowingly, voluntarily, and intelligently waiving his Sixth Amendment right to

counsel." *U.S. v. Santos*, 349 F. App'x 776, 777 (3d Cir. 2009).  A defendant's waiver is

"intelligent" when he "knows what he is doing and his choice is made with eyes open." *Iowa v.*

*Tovar*, 541 U.S. 77, 88 (2004) (quoting *Adams*, 317 U .S. at 279).  In particular, a "defendant

[must] be informed of *all* risks and consequences associated with his decision for self-

representation." *United States v. Peppers*, 302 F.3d 120, 135 (3d Cir.2002) (emphasis in

original).

To the extent defendant argues that his waiver of the right to counsel was not made

knowingly, that argument is belied by his answers to this Court's colloquy at the hearing on May

31, 2013.  During that hearing, the Court asked defendant, "[i]n light of these potential penalties

and in light of all of the difficulties of representing yourself, do you still desire to represent

yourself and give up your right to be represented by a lawyer at sentencing?"  Govt. Resp. Def.'s

§ 2255 Mot. 14.  Defendant answered in the affirmative.  The Court explained to defendant that

"you're going to represent yourself and you're going to come up with all of the legal arguments

that you need to come up with in connection with your sentencing." *Id.*  After defendant asked

about Mr. Busico's involvement as standby counsel, the Court further explained that it would

order Mr. Busico to assist if defendant informed the Court of his need for help. *Id.*  The Court

concludes that, in light of this colloquy, defendant made a knowing, voluntary, and intelligent

waiver of his right to counsel.

To the extent defendant complains of Mr. Busico's performance as standby counsel as a basis for his ineffective assistance of counsel claim, that claim is unsupported by law.  Because there is no constitutional right to standby counsel, "a defendant generally cannot prove standby counsel was ineffective."  *U.S. v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997); *see also U.S. v. Windsor*, 981 F.2d 943, 947 (7th Cir. 1992) ("This court knows of no constitutional right to effective assistance of standby counsel.").  Indeed, "[w]hen standby counsel is appointed, the primary concern is that appointed counsel does too much, so as to abrogate the *Faretta* right to self-representation, not too little."  *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984)).  Accordingly, defendant cannot claim ineffective assistance of counsel based on the alleged inadequacy of Mr. Busico's performance as standby counsel.

The Court further rejects defendant's argument that he was constructively denied his right to counsel in the period before his decision to proceed *pro se*.  In support of this argument, defendant cites the Third Circuit decision in *Appel v. Horn*, 250 F.3d 203 (3d Cir. 2001).  In *Appel*, the Third Circuit held that a defendant's right to counsel had been constructively denied during a ten day period between the date on which counsel was appointed and the date on which the trial court accepted the defendant's waiver of counsel at a competency hearing.  The *Appel* court found that counsel had abandoned their duty to conduct any investigation into the defendant's competency during the ten day period after they were appointed.  *Id.* at 216.  *Appel* is distinguishable from this case.  In *Appel*, the court reasoned it would not "impose an undue burden on defense counsel to require some investigation into the defendant's competency, especially in a capital murder case where the trial court has ordered a competency evaluation and hearing" to be held ten days after counsel was appointed.  *Id.* at 216-17.  In this case, over a year

passed between defendant's conviction and sentencing—due in part to the flood of motions filed by defendant following the conviction.  Moreover, over fourteen months elapsed between the date on which the Court granted defendant's request to proceed *pro se* at sentencing and the sentencing hearing.  There is no basis for holding Mr. Busico accountable for allegedly failing to prepare defendant to proceed *pro se* at a hearing that did not take place until over a year after defendant waived the right to counsel and began proceeding *pro se*.

The Court thus denies defendant's § 2255 Motion based on the claimed failure of Mr. Busico to prepare for the sentencing hearing.

### F.  Ground Seven: Cumulative Prejudicial Effect

Finally, defendant contends that, if no individual claim satisfies the *Strickland* prejudice prong, then "the cumulative effect of these errors deprived [defendant] of the fair and just assistance of counsel."  Def.'s Memo § 2255 Mot. 34.  "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007).  Accordingly, the analysis requires that at least two claims of ineffectiveness have merit such that their effect can be aggregated.  *See Williams v. Superintendent, SCI Greene*, No. 11-4319, 2012 WL 6057929, at *2 (E.D. Pa. Dec. 4, 2012).  As the Court concludes that there no meritorious claims of ineffectiveness of counsel in this case, there is no cumulative prejudicial effect.  The Court thus denies Ground Seven of defendant's § 2255 Motion.

### V.    CONCLUSION

For the foregoing reasons, defendant Evens Claude's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is denied.  A certificate of

appealability will not issue because reasonable jurists would not debate whether the Motion states a valid claim of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2) (providing that a certificate of appealability will issue "only if the applicant has made a substantial showing of the denial of a constitutional right"); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

An appropriate order follows.