IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| v. | |
| EVENS CLAUDE | NO.  12-33-01 |

DuBois, J.                                                                                                                          August 25, 2020

**M E M O R A N D U M**

**I.     INTRODUCTION**

*Pro se* defendant, Evens Claude, is an inmate at the Federal Detention Center in Philadelphia, Pennsylvania ("FDC Philadelphia").  On February 15, 2013, he was found guilty on two counts of bank fraud, six counts of access device fraud, eight counts of aggravated identity theft, and counterfeit currency conspiracy and substantive offenses following a jury trial. He was sentenced by the Court on August 29, 2014 to, *inter alia*, 232 months' imprisonment. The Government reports that *pro se* defendant's estimated release date is October 25, 2028. Gov't's Second Resp. 4.

Presently before the Court are *pro se* defendant's Emergency Motion for Compassionate Release, for a Sentence Reduction to Time Served under 18 U.S.C. [§] 3582(c)(1)(A) ("First Motion for Compassionate Release") and Motion for Release Due to Extraordinary and Compelling Circumstances Pursuant to 18 U.S.C. [§] 3582(c)(1)(A)(1) [sic] ("Second Motion for Compassionate Release").  For the reasons that follow, the First Motion for Compassionate Release is marked withdrawn without prejudice by agreement, and the Second Motion for Compassionate Release is denied and dismissed.

## II.     BACKGROUND

On April 29, 2020, amid the global pandemic triggered by COVID-19, *pro se* defendant filed requests for compassionate release with the Warden of FDC Philadelphia and the Warden of the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"). [1]  Def.'s First Mot. 4; Def.'s Ex. C.  After reviewing *pro se* defendant's medical records, the Warden of FCI Danbury denied the request on May 21, 2020.  Gov't's Second Resp. 4; Def.'s Ex. C-2. The Warden of FDC Philadelphia did not respond to the request. Def.'s Second Motion 4.

On May 26, 2020, *pro se* defendant filed his First Motion for Compassionate Release with the Court (Document No. 477).  In the Motion, *pro se* defendant did not state he had requested compassionate release from the Warden of FDC Philadelphia or Warden of FCI Danbury. As a consequence, the Government, in its response, argued that the Motion should be dismissed for failure to exhaust administrative remedies. [2]  Gov't's First Resp. 3.

On June 3, 2020, *pro se* defendant filed his Second Motion for Compassionate Release, explaining that he had filed a request for compassionate release with the Wardens of FDC Philadelphia FCI Danbury (Document No. 481).  In a letter attached to the Second Motion, *pro se* defendant asks the Court to "disregard" the First Motion because of his failure to make reference to his requests for compassionate release presented to the two Wardens.  Document No. 481, Page 1.  In response to that request, the Court will "disregard" *pro se* defendant's First Motion for Compassionate Release and mark it withdrawn without prejudice by agreement.

---

[1] *Pro se* defendant was transferred from FCI Danbury to FDC Philadelphia for an evidentiary hearing for his 28 U.S.C. §2255 motion.  Def.'s Second Mot. 2.  That hearing was held on March 14, 2019. The §2255 motion was denied by Memorandum and Order dated August 14, 2020.  *Pro se* defendant remains at FDC Philadelphia.  Def.'s Second Mot. 2.

[2] Exhaustion of administrative remedies is required before the Court can address a motion for compassionate release. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

*Pro se* defendant contends that he suffers from three medical conditions that constitute "extraordinary and compelling circumstances" under the First Step Act: (1) corneal transplants in 1999 and 2006, for which he uses corticosteroid eye drops; (2) periodontal disease; and (3) hypertension. Def.'s Second Mot. 9-10. In response, the Government states *pro se* defendant's Second Motion for Compassionate Release should be denied because the Centers for Disease Control and Prevention ("CDC") does not identify any of his medical conditions as risk factors. Gov't's Second Resp. 2. The Government also outlines in detail the Bureau of Prison's ("BOP") extensive response to the COVID-19 pandemic. Gov't's Second Resp. 5-10. The current phase, Phase Seven, of the BOP Coronavirus Action Plan ("Action Plan") includes social distancing, the use of face masks by inmates and staff, testing and quarantine for newly admitted inmates, strict limitations on visitors, and screenings for staff. Gov't's Second Resp. 5-8. The Government reports there have been no known positive cases of COVID-19 among the general inmate population at FDC Philadelphia. Gov't's Second Resp. 8. Further, the Government argues that *pro se* defendant's Motion for release to home confinement should be denied for lack of jurisdiction. Gov't's Second Resp. 9 n.3.

*Pro se* defendant filed a Reply on July 20, 2020 (Document No. 487). The Second Motion for Compassionate Release is ripe for decision.

### III. DISCUSSION

#### A. Applicable Law

*Pro se* defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Def.'s Second Mot. 1. Section 3582(c)(1)(A)(i) permits a federal prisoner to petition a court for compassionate release for "extraordinary and compelling reasons" after first filing a request for

3

compassionate release with the prison warden. 18 U.S.C. § 3582(c)(1)(A)(i). Generally, "extraordinary" means "[b]eyond what is usual, customary, regular, or common" and a "compelling need" is a "need so great that irreparable harm or injustice would result if it is not met." *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020) (quoting *Extraordinary*, Black's Law Dictionary (11th ed. 2019)). "Extraordinary and compelling reasons," for purposes of § 3582(c)(1)(A)(i), were previously defined by a policy statement in § 1B1.13 of the United States Sentencing Guidelines, which cited the medical condition, age, family circumstances of the defendant, and "other reasons" as determined by the BOP. U.S.S.G. § 1B1.13 cmt. n.1(A)-(D). While courts have concluded that this policy statement is no longer binding after enactment of the First Step Act, the "old policy statement provides helpful guidance" for courts applying § 3582(c)(1)(A)(i). *United States v. Beck*, No. 13-cr-186, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *see also Coleman v. United States*, No. CV 20-1769, 2020 WL 2079406, at *6 (E.D. Pa. Apr. 30, 2020) (DuBois, J.).

The Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 954, 597 (3d Cir. 2020). Moreover, "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner." *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020). Therefore, a general fear of contracting COVID-19 alone does not satisfy the "extraordinary and compelling reasons" requirement of the statute. *United States v. Ramirez-Ortega*, No. CR 11-251-07, 2020 WL 4805356, at *2 (E.D. Pa. Aug. 18, 2020) (DuBois, J). However, an inmate may be able to establish extraordinary and compelling circumstances when the inmate suffers from a medical

condition that the CDC has identified as a risk factor for COVID-19.  *Rodriguez*, 2020 WL 1627331, at *7.

### B.  *Pro Se* Defendant's Second Motion for Compassionate Release

*Pro se* defendant asserts three medical reasons for compassionate release in the Second Motion for Compassionate Release—his corneal transplants and use of corticosteroids, periodontal disease, and hypertension.  The Court concludes that *pro se* defendant's evidence with respect to these conditions does not satisfy the "extraordinary and compelling reasons" requirement of § 3582(c)(1)(A)(i), particularly in light of the precautions the BOP has taken to prevent the spread of COVID-19 in FDC Philadelphia.  *See* 18 U.S.C. § 3582(c)(1)(A)(i).

*Pro se* defendant first contends that his corneal transplants, performed in 1999 and 2006, put him at an increased risk of suffering complications should he contract COVID-19.  Def.'s Second Mot. 9-10.  Defendant's argument is two-fold: (1) that the CDC lists solid organ transplants as a risk factor for COVID-19; and (2) that the CDC has identified the use of immunosuppressants, including the corticosteroids *pro se* defendant uses daily in the form of eye drops, as a risk factor.  The Court concludes that these stated medical conditions do not present the type of risk factors addressed by the CDC.

While the CDC lists solid organ transplants as a risk factor for COVID-19, the CDC's cited research focuses solely on life-sustaining organs, primarily the heart, liver, and kidneys.  *See* Centers for Disease Control and Prevention, *People of Any Age with Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed August 18, 2020); Centers for Disease Control and Prevention, *Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19*, https://www.cdc.gov/coronavirus/2019-

ncov/need-extra-precautions/evidence-table.html (accessed August 18, 2020). The CDC cites no research concluding that corneal transplant patients are at an increased risk of suffering severe complications of COVID-19.

    *Pro se* defendant also contends that his corticosteroid eye drops, prescribed to prevent rejection, have weakened his immune system and thus increase his vulnerability to COVID-19. Def.'s Second Mot. 9-10. The Court first notes that the CDC reports there is only "mixed evidence" that the use of corticosteroids as treatment for systemic diseases is a risk factor for COVID-19. *See* Centers for Disease Control and Prevention, *Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (accessed August 18, 2020). More significantly, *pro se* defendant has presented no evidence that he has a weakened immune system. To the contrary, his BOP medical records show no significant medical issues. Def.'s Ex. E-1–E-12. Further, despite *pro se* defendant's claims that he has suffered more than ten immune system rejections from the corneal transplants, the only mention of rejection in his medical records is his self-reported medical history upon admission to FCI Danbury. Def.'s Second Mot. 10; Def.'s Reply 1; Def.'s Ex. E-2. In light of the absence of evidence that *pro se* defendant's immune system has been weakened, the status of the CDC research on the issue, and current conditions at FDC Philadelphia, the Court concludes that *pro se* defendant's history of corneal transplants and use of corticosteroid eye drops do not present extraordinary and compelling circumstances justifying compassionate release.

    *Pro se* defendant next contends that his periodontal disease increases his risk of complications should he contract COVID-19. Def.'s Second Mot. 10. Significantly, the CDC has not identified periodontal disease as a risk factor associated with COVID-19. *See* Centers for

Disease Control and Prevention, *People of Any Age with Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed August 19, 2020).  As such, the Court concludes that *pro se* defendant's periodontal disease does not present extraordinary or compelling circumstances.

Finally, *pro se* defendant contends that he has hypertension, which increases his risk of severe complications from COVID-19 but admits that it has never been diagnosed.  Def.'s Reply 2. To the contrary, his medical history reports that "he does not have an increased risk of Hypertension."  Def.'s Ex. E-2-B.  On that record, without proof of the presence and severity of any hypertension at the present time, the Court rejects this argument.

In addition to citing his medical conditions, *pro se* defendant argues that the risk of a COVID-19 outbreak alone presents extraordinary and compelling circumstances under § 3582(c)(1)(A).  In making this argument, *pro se* defendant relies on multiple cases in which the District Court granted prisoners compassionate release due, in part, to high COVID-19 infection levels in prison facilities.  *See United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *2 (D. Md. Apr. 28, 2020) (granting compassionate release due in part to the significant infection levels at FCI Danbury and noting that it was "one of the hardest hit federal prisons"); *United States v. Sawicz*, 08-cr-287 (ARR), 2020 WL 1815851, at *3 (E.D.N.Y. Apr. 10, 2020) (granting compassionate release upon consideration of, among other factors, the outbreak of COVID-19 at FCI Danbury).  Those cases, in both of which the correctional institutions experienced an outbreak of COVID-19, are clearly distinguishable from this case on the ground that there has been no such outbreak at FDC Philadelphia. As the Government states, there have been no

7

known cases of COVID-19 among the general inmate population at that institution.[3]  Gov't's Second Resp. 8.  Moreover, as the government outlines in its response to the Second Motion, the BOP's Action Plan provides thorough precautions to prevent the spread of COVID-19 and has been highly successful in FDC Philadelphia.  Gov't's Second Resp. 5-10.  The Court concludes that, because *pro se* defendant's history of corneal transplants and use of corticosteroids, periodontal disease, and claim of hypertension do not present extraordinary and compelling circumstances and FDC Philadelphia has successfully implemented a thorough Action Plan to prevent the spread of COVID-19 in its facilities, compassionate release is not warranted in this case.

In the alternative, *pro se* defendant requests immediate release to home confinement, citing the Attorney General's authorization of the BOP to transfer prisoners with high vulnerability to COVID-19 to home confinement under the Coronavirus Aid, Relief, and Economic Security Act "(CARES Act)", Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020).  In relevant part, the CARES Act provides that if the Attorney General "finds that emergency conditions will materially affect the functioning of the [BOP]," the BOP Director may temporarily "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624(c)(2).[4]  Pub. L. No. 116-136 § 12003(b)(2).  On April 3, 2020, the Attorney General made the requisite finding of emergency

---

[3] The Government reports six inmates have tested positive for COVID-19 upon transfer to FDC Philadelphia. Gov't's Second Resp. 8.  These inmates were isolated from the general inmate population.  Gov't's Second Resp. 8. The BOP website, accessed as of August 21, 2020, is consistent with the Government's report. Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (accessed August 21, 2020).

Upon transfer to FDC Philadelphia, all inmates are tested and placed in a fourteen-day quarantine.  Gov't's Second Resp. 8.  They are tested again at the end of the fourteen-day quarantine period and are not released into the general inmate population until receiving a negative result on their last test.  Gov't's Second Resp. 8.

[4] 18 U.S.C. § 3624(c)(2) provides, *inter alia*: "The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."

conditions and authorized the BOP Director to transfer prisoners with greater vulnerability to COVID-19 to home confinement. *See* Mem. from Att'y Gen. William Barr to Dir. of BOP, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020), https://www.justice.gov/file/1266661/download.

Importantly, the BOP has sole authority to determine which inmates to move to home confinement under 18 U.S.C. § 3624(c)(2). *See United States v. Mansaray*, No. CR 13-236, 2020 WL 3077184, at *3 (E.D. Pa. June 10, 2020) ("This discretion rests solely with the Attorney General and the BOP Director."); *Cordaro v. Finley*, No. 3:10-CR-75, 2020 WL 2084960, at *6 (M.D. Pa. Apr. 30, 2020) ("[T]he jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons.") (internal citation and quotation marks omitted). Such a determination is not reviewable by courts. *See* 18 U.S.C. § 3621(b) ("[A] designation of a place of imprisonment . . . is not reviewable by any court."); *see also United States v. Powell*, No. CR 15-496-4, 2020 WL 2848190, at *2 n.5 (E.D. Pa. June 2, 2020). The Court is therefore without jurisdiction to adjudicate *pro se* defendant's request for home confinement under the CARES Act.

## IV.     CONCLUSION

For the foregoing reasons, *pro se* defendant's First Motion for Compassionate Release is marked withdrawn without prejudice by agreement.

To the extent that *pro se* defendant's Second Motion for Compassionate Release requests compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Motion is denied on the record addressed in this Memorandum. To the extent that *pro se* defendant's Second Motion for Compassionate Release requests home confinement designation under the CARES Act, the Motion is dismissed for lack of jurisdiction. An appropriate order follows.

After this Memorandum and Order was finalized but before the Order was signed, *pro se* defendant filed third and fourth motions for compassionate release (Document Nos. 489 and 491). By separate order dated August 25, 2020, the Court has directed the Government to respond to the third and fourth motions.